UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TAMA PLASTIC INDUSTRY,                    )
      *Plaintiff/Counter-defendant*,      )
                            )
      *vs.*                                        )     1:11-cv-0783-JMS-DKL
                            )
PRITCHETT TWINE & NET WRAP, LLC, *et al.*,  )
      *Defendants/Counter-plaintiffs.*      )

## AMENDED ORDER DENYING REQUEST FOR PRELIMINARY INJUNCTION

Presently pending before the Court in this patent and trademark infringement action is Plaintiff/Counter-defendant Tama Plastic Industry's ("Tama") Motion for Preliminary Injunction. [Dkt. 58.] Tama seeks to preliminarily enjoin Defendants/Counter-plaintiffs Pritchett Twine & Net Wrap, LLC, and Joseph Jerald Pritchett, also known as Jerald Pritchett (collectively, "Pritchett"), from any further alleged infringement on Claim 1 of Patent No. 6,521,551 (the "'551 Patent'"), which is directed at knitted netting used to wrap agricultural produce into bales. For the following reasons, the Court denies Tama's request for a preliminary injunction.

**I.**

**APPLICABLE LAW**

In patent cases, as a general matter, the law of the regional circuit governs non-patent issues, and Federal Circuit law governs "both substantive and procedural issues intimately involved in the substance of enforcement of the patent right." *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) (internal quotations and citation omitted). Generally, the law of the Federal Circuit governs the issuance of preliminary injunctions in these cases because although a preliminary injunction is procedural, it involves "substantive matters unique in patent law and, therefore, is governed by the law of [the Federal Circuit]." *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988).

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004). A plaintiff is entitled to a preliminary injunction if it can succeed in showing: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citations omitted). These factors are not dispositive individually; rather, the Court must "weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Id.* Logic dictates, however, that a movant cannot be granted a preliminary injunction "unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Id.* (original emphasis).

The evidentiary burdens at the preliminary injunction stage track the burdens at trial, but the ultimate question before the Court is different. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). For example, "[i]nstead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Id.*; *see also Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) (emphasizing that the patentee/movant "bore the burden of establishing a likelihood of success on these issues and thus must have shown that [alleged infringer] likely will not prove that the patent is invalid"). In resisting a preliminary injunction motion, the alleged infringer need not make out a case of actual invalidity; instead, "vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Altana Pharma AG v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 999, 1006

(Fed. Cir. 2009) (citation omitted).  This burden "requires less proof than the clear and convinc-ing showing necessary to establish invalidity itself at trial."  *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007).  If the alleged infringer satisfies this burden, the burden shifts back to the patentee to show that the defense lacks substantial merit.  *Altana Pharma*, 566 F.3d at 1006.

# II.
## Background

Tama was established in 1950 as a business partnership registered in the State of Israel. [Dkt. 60-2 at 2 ¶ 5.]  Tama currently employs more than 1,000 people in Israel and abroad.  [*Id.* at ¶ 6.]  A significant portion of Tama's business involves agricultural packaging and protective products referred to as crop packaging.  [*Id.* at ¶ 8.]  Tama's primary product within crop packag-ing is a line of products used to wrap agricultural produce such as hay, silage, and straw.  [*Id.*]

On February 18, 2003, the United States Patent and Trademark Office ("USPTO") issued Tama the '551 Patent.  [Dkts. 60-2 at 3 ¶ 12; 59-1 at 3.]  Claim 1 of that patent describes a knit-ted netting comprised of longitudinal (franze) polyolefin ribbons knitted with lateral (shuss) pol-yolefin ribbons to form a netting wherein at least one of the lateral/shuss ribbons has an actual ribbon length that is at least 10% greater than the calculated ribbon length for the netting.  [Dkt. 59-1 at 13 (Claim 1).]  This design is also known as modified shuss net wrap.  [Dkt. 59-6 at 2 ¶ 7.]  An advantage of modified shuss net wrap is that it undergoes less lateral shrinkage when it is stretched in the longitudinal direction when wrapping agricultural products.  [*Id.*]  Because of this reduced shrinkage, modified shuss net wrap can cover the entire width of the bale from

edge-to-edge,[1] protecting the entire bale from rain, snow, and wind more effectively than con-ventional net wrap.  [Dkt. 60-2 at 20.]

In late 2008, Pritchett began importing net wrap from China for resale in the United States.  [Dkt. 73 at 9.]  In fall 2010, Tama's United States distributor, Ambraco, Inc. ("Ambra-co"), informed Tama that Pritchett was importing a net wrap product from China that also per-formed with reduced lateral shrinkage and was being sold for a lower price than Tama's product.  [Dkt. 60-2 at 4-5 ¶ 16.]  Ambraco obtained three rolls of Pritchett's imported product, labeled with the name "JP Baler NetWrap," and Tama tested it at its headquarters.  [Dkt. 60-2 at 5 ¶ 17.]  Tama performed tests on the Pritchett net wrap on April 5, 2011, March 7, 2012, and March 12, 2012, to measure the length of the lateral shusses and whether the net wrap had reduced lateral shrinkage.  [Dkt. 59-6 at 4-13.]  Based on the results of these tests, Tama alleges that Pritchett's imported net wrap infringes on the '551 Patent.  [Dkt. 60-1 at 26-29 (citing dkt. 59-6).]  Tama estimates that Pritchett has imported and sold 30,000 rolls of allegedly infringing net wrap.  [Dkt. 60-2 at 5.]

Tama filed suit against Pritchett in June 2011, alleging patent infringement, trademark in-fringement, and unfair competition.  [Dkt. 1.]  Tama filed a motion for preliminary injunction on March 30, 2012, seeking to enjoin Pritchett from importing and selling the Chinese net wrap it believes infringes on Claim 1 of its '551 Patent.  [Dkt. 60-1 at 10.]  Claim 1 provides:

> 1.  A knitted netting comprising:  longitudinal polyolefin ribbons; lateral polyole-fin ribbons knitted with said longitudinal polyolefin ribbons to form a knitted net-ting; wherein at least one of said lateral polyolefin ribbons of said knitted netting has an actual ribbon length that is at least 10% greater than a calculated ribbon length for said knitted netting, which netting exhibits reduced lateral shrinkage

---

[1] While Tama has asserted a trademark violation claim against Pritchett for allegedly infringing on its trademark EDGE TO EDGE®, [dkt. 1 at 7-9], that claim is not at issue in Tama's prelimi-nary injunction motion, [dkt. 122 at 19].  Tama's motion is further limited to alleged infringe-ment regarding only Claim 1 of the '551 Patent.  [Dkt. 60-1 at 11.]

relative to netting produced with an actual ribbon length equal to said calculated ribbon length upon elongation up to 100%.

[Dkt. 59-1 at 13.]

Tama estimates that Pritchett's alleged infringement has caused it damages between $780,000 and $21,514,000.  [Dkts. 60-1 at 36-42; 60-2 at 5-7.]  Tama argues that it will be irreparably harmed if an injunction is not entered because, based on deposition testimony from January 2012, Tama believes that Pritchett[2] has insufficient finances to pay Tama's estimated damages.  [*Id.*]

In addition to opposing Tama's preliminary injunction request, [dkt. 70], Pritchett filed a request for *ex parte* reexamination of the '551 Patent with the USPTO,[3] [dkt. 69-1].   The Court held a hearing on Tama's injunction request in June 2012.  [Dkts. 74; 118; 122.]  While the motions were under advisement, the USPTO granted Pritchett's request for *ex parte* reexamination, stating, in relevant part that Pritchett's reexamination request raised a substantial new question of patentability regarding the '551 Patent.  [Dkt. 148-1.]  Specifically, the USPTO found substantial new questions of patentability regarding whether the '551 Patent is a combination of two or more other patents that were in existence before the '551 Patent was issued.  [*Id.* at 6-9.]

Pursuant to an order from the Court requesting additional briefing in light of this development, the parties filed memoranda on July 18, 2012, regarding how the USPTO's grant of

---

[2] Although Tama contended in its brief and at oral argument that Mr. Pritchett formed a limited liability company to attempt to "shield himself personally from any liability," [dkts. 60-1 at 9; 122 at 7], Mr. Pritchett has conceded that he is personally liable for any judgment, [dkt. 122 at 105-106].

[3] Pritchett also filed a motion to stay this litigation pending the outcome of its reexamination request with the USPTO, [dkt. 69], and that motion remains under advisement.

reexamination affected the pending motions, [dkts. 153; 154], and all motions are now fully briefed and ripe for ruling.[4]  Additional facts will be provided as necessary.

### III.
### TAMA'S MOTION FOR A PRELIMINARY INJUNCTION[5]

#### A.  The Chi Affidavit

Before turning to the merits of Tama's motion for a preliminary injunction, the Court must address an evidentiary dispute regarding an affidavit from Rensheng Chi (the "Chi Affidavit") that Pritchett designated in opposition to Tama's motion.  [Dkt. 72.]  Pritchett argues that Tama made a disclaimer during patent prosecution that an unmodified Raschel knitting machine could not make the netted knitting at issue in the '551 Patent.  [Dkt. 73 at 15-16, 18-20.]  Pritchett designates the Chi Affidavit as support for its proposition that the accused product is made on an unmodified Raschel knitting machine and, therefore, does not infringe on the '551 Patent.  [*Id.* (relying on dkt. 72).]

Tama argues that the Chi Affidavit should be stricken because Mr. Chi was not made available for a deposition as required by a discovery order regarding Tama's motion for preliminary injunction.  [Dkt. 94 at 8-10 (citing dkt. 66).]  The pertinent discovery order provides, in relevant part:

> If Defendants submit a declaration or affidavit with their opposition to the motion for preliminary injunction, and if the declarant is not made available for deposition during the week following the filing of Defendants' opposition memoran-

---

[4] The Court grants Tama's Motion to Consider Arguments Related to Defendants' Surreply. [Dkt. 116.]

[5] The Federal Circuit has held that it is an abuse of discretion for a district court to deny a preliminary injunction request without considering the four injunction factors, even if the USPTO has granted reexamination of the patent-in-suit.  *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008).  Therefore, the Court will address the merits of Tama's request for a preliminary injunction despite the USPTO's decision to grant reexamination of the '551 Patent.  [Dkt. 148-1.]

dum, then said declarations cannot be relied upon at the hearing relating to the motion for preliminary injunction.

[Dkt. 66 at 2 ¶ 5.]

Pritchett does not deny that Mr. Chi was not made available for a deposition; instead, as its counsel explained at the hearing, it interprets the quoted language of the discovery order to mean that an affidavit from a declarant who was not made available for a deposition "would not be relied upon [by either party] at the hearing.  It is in the record, and I said I do not presume to tell a Federal District Court Judge what she can or cannot consider in the record.  That is all it says." [Dkt. 122 at 78.]  The Court interprets the foregoing to mean that counsel believes that the declaration was out-of-bounds for purposes of the hearing but fair game for the Court's consideration of the motion.  Accordingly, Pritchett asks the Court to deny Tama's motion to strike and to rely on the Chi Affidavit to find that Pritchett's imported product does not infringe on the '551 Patent.

The Court concludes that Pritchett's interpretation of the applicable discovery order is untenable.  If Pritchett's interpretation is correct, Pritchett could have submitted numerous affidavits in opposition to Tama's motion and then declare all of its affiants to be unavailable, effectively stonewalling Tama from the same type of discovery that Pritchett was allowed to engage in with Tama's declarants.  If the sole consequence of such a transgression is that the offending party is precluded from referencing the key evidence at the hearing, the Court loses the ability to have a full discussion of that evidence with the parties at the hearing, while the offending party suffers little consequence.  The unworkable nature of Pritchett's proffered interpretation of the discovery order was made apparent at the hearing when Pritchett was unable to make basic arguments without referencing the Chi Affidavit.  [See dkt. 122 at 84-86, 90-91 (The Court: "It says you can't rely on it."  Pritchett's counsel:  "At the hearing."  The Court:  "Didn't you just do

- 7 -

that though?" . . . . Pritchett's counsel:  "To the extent that I have relied upon Chi's [Affidavit] here today, you can disregard that.").]  For these reasons, the Court rejects Pritchett's interpretation of the discovery order and strikes Mr. Chi's affidavit, [dkt. 72].[6]

### B.  Reasonable Likelihood of Success on the Merits

#### 1.  Tama's Burden

In order to demonstrate a reasonable likelihood of success on the merits, Tama must show that, in light of the presumptions and burdens it will inherit at a trial on the merits, (1) it will likely prove that Pritchett infringes on the '551 Patent, and (2) Tama's infringement claim will likely withstand Pritchett's challenges to the validity and enforceability of the '551 Patent. *Amazon.com, Inc.*, 239 F.3d at 1350.  If Pritchett raises a substantial question concerning either infringement or validity—*i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, a preliminary injunction is inappropriate.  *Id.* at 1350-51.

As Tama confirmed at oral argument, at times, it (erroneously) places the burden on Pritchett to prove the invalidity of the '551 Patent in order to withstand Tama's preliminary injunction request.  [Dkt. 122 at 44.]  At this stage of the proceedings, however, Pritchett does not need to prove actual invalidity—instead, Pritchett simply must show that the validity of the '551 Patent is substantially in question.  *Altana Pharma*, 566 F.3d at 1006.  This burden requires less proof than the clear and convincing standard necessary to establish invalidity at trial.  *Entegris*, 490 F.3d at 1351.  If Pritchett shows vulnerability in the patent, the burden shifts to Tama to prove that Pritchett's defense lacks substantial merit.  *Altana Pharma*, 566 F.3d at 1006.  In other

---

[6] In light of this ruling, the Court will not address Pritchett's argument that its product does not infringe on the '551 Patent because of a disclaimer that Tama allegedly made to the USPTO during patent prosecution.  [Dkt. 73 at 15-16, 18-20.]  Even if Tama made such a disclaimer, the Chi Affidavit is the only evidence Pritchett designates to show that its product was made in a non-infringing manner.

words, to obtain a preliminary injunction, the burden lies on Tama, the movant, to persuade the Court that it is likely to succeed at trial on the validity issue, despite Pritchett's challenge to the validity of the '551 Patent.  *Titan Tire*, 566 F.3d at 1377.

## 2.  Evidence Establishing Infringement

Tama designated multiple affidavits and evidence supporting its contention that Pritchett's product infringes on Claim 1 of the '551 Patent.  [Dkts. 59-2 to 59-5; 59-6 to 59-13; 59-14.] Specifically, on three occasions, testers used the testing procedure described in the '551 Patent and determined that at least one lateral shuss on a Pritchett product was at least 10% greater than the calculated shuss length.  [*See, e.g.*, dkt. 59-6 at 4-13.]  Tama argues that this testing proves that Pritchett's imported product literally infringed on Claim 1 of the '551 Patent.  [Dkt. 60-1 at 26-30.]  Tama provides a claim construction chart, [dkt. 62-1], and an infringement claim chart, [dkt. 59-1].

Pritchett contends that Tama's testing cannot show infringement because its test results are "not reproducible, vary wildly from one test attempt to the next, and the tests were performed under conditions subject to many factors beyond Tama's control."  [Dkt. 73 at 20.]  Pritchett does not challenge the contents of Tama's claim construction chart or its infringement claim chart.  Instead, Pritchett calculates the standard deviation of Tama's test results and, without further analysis, declares the testing to be unreliable.  [Dkt. 73 at 21.]

Tama's declarations and testing data span more than 200 pages of the record.  [Dkts. 59-2 to 59-14.]  With no substantive analysis or evidence to support their contention that the lateral shusses on Pritchett's net wrap deviate less than the results of Tama's testing, the Court concludes that Pritchett's unsubstantiated attempt to invalidate Tama's testing results fails.  Like-

wise, the portion of Tamar Ron's[7] deposition that Pritchett cites for its assertion that Tama admits its tests are unreliable is taken out of context and does not support the vast inferential leap that Pritchett makes.  [Dkt. 73 at 21 (citing dkt. 71-4 at 15).]  For these reasons, the Court concludes that Pritchett has not raised a substantial question concerning infringement and will proceed to the parties' arguments concerning the validity of the '551 Patent.

### 3.  Effect of USPTO's Grant of Reexamination

The USPTO granted reexamination of the '551 Patent because it found the existence of substantial new questions of patentability on various claims within the patent.  [Dkt. 148-1.]  The USPTO noted that U.S. Patent Nos. 5,104,714, *et al.* ("Leiber '714" or "Leiber"),[8] and 5,660,062 ("Diestel") were previously cited prior art but that U.S. Patent No. 5,660,656 ("Schafer") was newly cited prior art.  [*Id.* at 5.]

The USPTO observed that Leiber discloses an elastic wrapper for cylindrical bales of hay, wherein linear low density polyethylene ribbons are knitted into a Raschel netting comprised of longitudinal ribbons and lateral ribbons.  [Dkt. 148-1 at 6-7.]  It further noted that Diestel teaches the use of lateral ribbons that have a length at least 10% greater than the calculated ribbon length.  [*Id.* at 7.]  The USPTO also observed that Schafer discloses a process for producing a knitted, longitudinally elastic fabric layer that exhibits reduced lateral shrinkage when elongated to 100%.  [*Id.* at 8.]  Ultimately, the USPTO found substantial new questions of patentability regarding multiple claims of Tama's '551 Patent, including Claim 1, and whether that

---

[7] Mr. Ron is a Tama employee who worked with Tama's United States distributor to obtain samples of Pritchett's accused product and facilitate the testing.  [Dkt. 59-6 at 1, 3-13.]

[8] Patent No. 5,256,353 ("Leiber '353") is a divisional patent of Leiber '714.  [Dkt. 73-1 at 1 ("Related U.S. Application Data").]  As Tama confirms, no distinction should be drawn between these patents because they "have essentially the identical disclosure and are both prior art to the '551 Patent."  [Dkt. 94 at 16.]

claim could be a combination of Leiber and Diestel, [dkt. 148-1 at 6-7], Leiber and Schafer, [*id.* at 7-8], or of all three previously issued patents, [*id.* at 9-10].

The parties disagree about the effect the USPTO's grant of reexamination should have, if any, on the Court's analysis.  Tama argues that the USPTO's decision to reexamine the '551 Patent "does not affect the issues and merits" of its injunction request, in part, because the grant of the reexamination is "almost automatic" since "it is the only way the [USPTO] can trigger its retention of the filing fee for reviewing the request for reexamination."[9]  [Dkt. 154 at 2.]  Pritchett argues that the USPTO's decision to grant reexamination "further bolsters" its argument that there is a substantial question of the '551 Patent's validity.  [Dkt. 153 at 2.]

The Federal Circuit Court of Appeals has held that the reexamination of the validity of a patent "may be relevant" to determining the likelihood of success.  *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008).  The Federal Circuit cautions, however, that the USPTO "does not appear to equate the 'substantial new question of patentability' standard for whether reexamination should take place with the 'substantial question of validity' standard by which a defendant may prevent a patentee from demonstrating a likelihood of success on the merits."  *Id.* at 848.

Because the USPTO's decision to grant reexamination relied on a different standard than that which the Court must apply to determine Tama's likelihood of success on the merits, the Court finds that the pending reexamination weighs against, but does not preclude, Tama's likely success on the merits.  Therefore, the Court turns to Pritchett's validity defense.

---

[9] This argument suggests an almost corrupt motive on the part of the USPTO to grant reexamination to generate revenue, yet this is the same agency whose original patentability decision Tama seeks to uphold.  The irony of Tama's contradictory arguments is not lost on the Court.

### 4. Obviousness

Pritchett argues that the '551 Patent is invalid because it is an obvious combination of Leiber and Diestel. [Dkt. 73 at 17.] Specifically, Pritchett contends that Leiber recites all of the claim limitations of Claim 1 of the '551 Patent, except for reduced lateral shrinkage, and that Diestel inherently discloses the reduced lateral shrinkage limitation. [*Id.*]

A claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). This general principle translates into "whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1381 (Fed. Cir. 2009). Inherent disclosures in prior art can render a claimed invention obvious. *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995).

Obviousness is ultimately a question of law, based on underlying factual determinations. *Altana Pharma*, 566 F.3d at 1007. The factual determinations that form the basis of the legal conclusion of obviousness include (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) evidence of secondary factors, known as objective indicia of non-obviousness. *Id.* Secondary factors of nonobviousness include commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000).

Validity challenges during preliminary injunction proceedings can be successful—that is, they may raise substantial questions of invalidity—on evidence that would not be sufficient to support a judgment of invalidity at trial. *Amazon.com, Inc.*, 239 F.3d at 1358. "[A] party alleg-

ing invalidity due to obviousness must articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1379 (Fed. Cir. 2006). The relevant inquiry is what a hypothetical ordinarily skilled artisan would have gleaned from the cited references at the time that the patent application leading to the patent-in-suit was filed. *Amazon.com, Inc.*, 239 F.3d at 1364.

After analyzing the parties' arguments and the submitted materials, the Court concludes that Pritchett has presented sufficient evidence to raise a substantial question regarding the validity of Claim 1 of the '551 Patent. The claim at issue recites a knitted netting made of longitudinal and lateral polyolefin ribbons where at least one of the lateral ribbons has an actual ribbon length that is at least 10% greater than the calculated ribbon length. [Dkt. 59-1 at 13.] It further provides that the resulting netting exhibits reduced lateral shrinkage relative to netting produced with an actual ribbon length equal to the calculated ribbon length upon elongation up to 100%. [*Id.*] Pritchett has submitted a table illustrating its contention that the elements of Claim 1 are provided for in the Leiber and Diestel patents. [Dkt. 69-1 at 36-56.]

Leiber teaches a knitted netting that can be used to wrap agricultural loads, such as bales of hay. [Dkt. 73-1 at 6.] The netting is made of thermoplastic material from a single polyolefin or a blend of polyolefins that can be formed into knittable ribbons that have elasticity. [*Id.* at 7.]

Diestel teaches a knitted netting that has modified function threads that have "reserves." [Dkt. 73-2 at 2, 12; *see also* dkt. 73-2 at 4-5 (Figures 4 & 6 illustrating reserves).] As the USPTO pointed out in a communication rejecting one of the claims in an application preceding the '551 Patent, "the [Diestel] netting has a reserve of slack in the lateral threads [that] appear[s] to show a reserve of at least 10%." [Dkt. 69-1 at 95.]

- 13 -

Although the Diestel and Leiber patents do not expressly disclose a reduced lateral shrinkage limitation, Diestel inherently discloses that limitation because its function threads have reserves of at least 10%. In fact, the background of the '551 Patent confirms that it was well known to one of ordinary skill in the art that transverse shrinkage has been inherent in Raschel knitted netting "for as long as machines to produce such netting have existed" and that "[s]uch producers are also aware that increased tension on the shuss creates a narrower netting and loosened tension on the shuss prevents narrowing to some degree." [Dkt. 59-1 at 11.] Based on the combination of the teachings of Leiber and Diestel, the Court concludes that Pritchett has raised a substantial question regarding the obviousness of Claim 1 of the '551 Patent.

Tama defends the validity of the '551 Patent by emphasizing that it requires "the presence of a triangle configuration in the knitted netting" and that the Diestel netting does not have a triangle configuration. [Dkt. 154 at 4.] Even if this is true, however, Tama ignores that the Leiber Patent illustrates a triangle configuration. [Dkt. 73-1 at 1; 5 (Figure 6).]

Tama also directs the Court to what it contends to be objective evidence of nonobviousness, including that its product has enjoyed commercial success, that John Deere includes a sample roll of its product with every new baler it sells, and that other companies have referenced the '551 Patent in their patent applications. [Dkt. 60-1 at 34.] In response, Pritchett submits a report from its expert, Michael Pellegrino, concluding that Tama had not established market interest for the utility it claims for the '551 Patent.[10] [Dkt. 89-1 at 5.] Mr. Pellegrino cites research from the University of Wisconsin listing 18 factors that consumers consider when making a net wrap purchase. [Dkt. 89-1 at 5-6.] The research concludes that increased productivity, not full bale cov-

---

[10] Tama's argument that the Court should not consider Mr. Pellegrino's report because it initially was submitted as an unverified document, [dkt. 94 at 22], is denied as moot because the Court granted Pritchett leave to submit a verified copy of the report, [dkt. 90].

erage, is the biggest advantage for net wrap.  [*Id.*]  The Court concludes that Tama's proffered objective evidence of nonobviousness is insufficient to overcome the substantial question of invalidity Pritchett has raised at this stage of the proceedings.

For the reasons detailed herein, the Court concludes that Pritchett has raised a substantial question regarding the validity of Claim 1 of the '551 Patent.  Specifically, Pritchett has raised a substantial question that based on the teachings of Leiber and Diestel, Claim 1 of the '551 patent would have been obvious to a person having ordinary skill in the art at the time.  Therefore, the Court concludes that Tama has not proven a likelihood of success on the merits.  The Court hastens to add, however, that this decision in no way resolves the ultimate question of validity.  In other words, the Court holds only that Pritchett has cast enough doubt on the validity of Claim 1 of the '551 Patent for purposes of avoiding a preliminary injunction.

### C.  Irreparable Harm

The second factor the Court must consider is whether Tama will suffer irreparable harm if an injunction is not issued.  Tama estimates that Pritchett's alleged infringement has caused it damages between $780,000 and $21,514,000.  [Dkt. 60-1 at 36-42; dkt. 60-2 at 5-7.]  Tama argues that Pritchett's finances are insufficient to support the monetary award it believes it will receive; therefore, Tama contends that its remedy at law is inadequate.[11]

Mr. Pritchett disputes Tama's damages calculations, [dkt. 73 at 23-24]; however, he concedes that if Tama succeeds, he is personally liable for any judgment in this action, [dkt. 122 at

---

[11] Although Pritchett argues that Tama's alleged delay in moving for preliminary injunction cuts against its allegations of irreparable harm, [dkt. 73 at 22], Pritchett does not deny that Tama discovered for the first time during Mr. Pritchett's deposition in January 2012 that he may not have enough assets to cover the damages to which Tama believes it is entitled, [dkt. 94 at 7-8]. The parties subsequently engaged in settlement discussions, [dkts. 47; 50], and Tama filed its motion shortly after those discussion broke down, [dkt. 58].  The Court finds that Tama did not engage in significant delay such that it could not show irreparable harm.

105-06]. Mr. Pritchett owns approximately 1,000 acres of land in Nebraska, and his home is located on seven acres of that land. [Dkt. 59-16 at 44.] Based on Mr. Pritchett's representations about the land, it would be worth around $3,000,000. [Dkt. 59-16 at 44.] Therefore, if Tama can show that an award in this case is likely to exceed $3,000,000, then the irreparable harm factor may weigh in favor of issuing an injunction.

Competitive harms theoretically can be offset by monetary payments; however, the likely availability of those payments limits the circumstances in which this is possible. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155-56 (Fed. Cir. 2011) (collecting cases). Therefore, the questionable financial condition of an alleged infringer, specifically the improbability that the patentee could collect a money judgment, can support issuing an injunction. *Id.*

Because Tama has not established a likelihood of success on the merits, it is not entitled to a presumption of irreparable harm. *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 452 F.3d 1331, 1347 (Fed. Cir. 2006). Therefore, the Court rejects Tama's arguments placing the burden on Pritchett to present evidence regarding Tama's alleged losses. [Dkt. 94 at 22-26.]

Tama presents multiple theories of recovery, which the Court will systematically address. First, Tama estimates that Pritchett sold 30,000 rolls of allegedly infringing product, resulting in revenue between $4,935,000 and $5,235,000. [Dkt. 60-1 at 36.] Tama uses the higher of these numbers and proposes that it receive a 15% royalty on Pritchett's sales, which would result in an award of $780,000. [*Id.*] As an initial matter, the Court notes that Tama presents no evidence that 15% would be a reasonable royalty in this industry. *See Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990) (emphasizing that a patentee has the burden to prove damages, including that its proposed royalty would be reasonable, even if its patent is infringed upon). And at the hearing, when pressed, counsel could not identify a

specific royalty Tama charges to any of its business partners or distributors or a specific royalty others in the marketplace charge for similar products.  [Dkt. 122 at 63-65.]  Moreover, even under Tama's proposed royalty, Mr. Pritchett's assets would be sufficient to compensate Tama. Therefore, Tama has not shown irreparable harm under its first theory of damages.

Second, Tama proposes that if it is successful, it should receive lost profits for Pritchett's alleged infringement.[12]  Tama alleges that it has 50% of the entire net wrap market or 100% of the market for net wrap with reduced lateral shrinkage.  [Dkt. 60-1 at 37-38.]  As Pritchett points out, however, Tama submits nothing more than a conclusory affidavit from its Commercial Director, Aviv Linn, that it has 50% of the total net wrap market.[13]  [Dkts. 73 at 26 (listing at least five competitors in the agricultural net wrap market); 89-1 at 2-5 (Pritchett's expert report disputing Tama's purported market share).]  The Court agrees with Pritchett that Tama has not presented sufficient evidence of its market share or resulting lost profits to show irreparable harm under this theory.  *See Siegel Oil v. Richardson*, 208 F.3d 1366, 1374 (Fed. Cir. 2000) (rejecting a company official's affidavit for lacking "factual and quantitative support" and being "devoid of references to supporting documentation").  Moreover, assuming for the sake of the argument that Tama has 100% of the market, Tama's purported lost profits, even in addition to the royalty it proposes, are less than $3,000,000.  Because Mr. Pritchett's assets are sufficient to compensate

---

[12] The Court will not reference the specific amount of lost profits Tama alleges because Tama contends that its profit margin is a trade secret that would cause it to suffer a competitive disadvantage if revealed.  [Dkt. 178 at 3-5.]  Because the Seventh Circuit Court of Appeals has disapproved of district courts releasing opinions "with sentences and paragraphs blotted out," the Court has made oblique references to these numbers so that its entire decision can be made public.  *Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995).  When given the opportunity to request redactions, [dkt. 171], this paragraph was the only one Tama asked for the Court to modify to maintain confidentiality, [dkts. 178; 178-1].

[13] The Court rejects the argument in Tama's reply that the declarant explained his calculation in his deposition.  [Dkt. 94 at 22.]  While Mr. Linn acknowledged various competitors, he admitted that he did not know their sales figures.  [*See, e.g.*, dkt. 96-1 at 6.]

Tama for the losses it proposes, the Court concludes that Tama has not shown irreparable harm under its lost profits theory of damages.

Third, Tama proposes that if it is successful, it should receive lost profits based on the alleged price erosion its product has suffered as a result of Pritchett's sales. [Dkt. 60-1 at 38.] Tama asserts that to compete with Pritchett's product, it had to reduce its product's price by approximately $35-$41 between 2010 and 2011. [Dkt. 60-1 at 38.] Based on the amount of rolls Tama sold during those years, it contends that it lost approximately $21,500,000 from price erosion. [*Id.*] As Pritchett points out, however, it is unclear from Tama's figures (which rely on the price the ultimate consumer pays) whether Tama suffered the full effect of the alleged price erosion or whether its distributor, Ambraco, also suffered a portion of the loss. [Dkt. 89-1 at 10-11.] Moreover, the sales figures on which Tama relies are materially inconsistent with the figures attached to Mr. Linn's affidavit, on which Tama relies. [*Cf.* dkt. 60-2 at 6 *with* dkt. 60-2 at 18.] And Pritchett's expert cites additional factors that could have caused a portion of Tama's price erosion. [Dkt. 89-1 at 13-14 (listing, for example, the possible impact of weather events, polyolefin production costs, or industry pricing trends on the price of net wrap).] For these reasons, the Court concludes that Tama has not shown that it is likely to obtain a judgment in an amount uncollectable from Pritchett.

Finally, Tama asserts that in addition to the theories of damages discussed above, it could be awarded up to three times the amount of its proposed compensatory damages because it contends that Pritchett is a willful infringer since he did not obtain counsel or investigate any patent issues before importing the allegedly infringing product. [Dkt. 60-1 at 39.] Tama's argument fails, however, because the Federal Circuit has held that proof of willful patent infringement requires at least a showing of "objective recklessness" by the alleged infringer, and there is no af-

firmative duty of due care or affirmative duty to obtain the opinion of counsel. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Because Tama has not presented sufficient evidence establishing that it may be entitled to damages for willful infringement, the Court concludes that it has not shown that it is likely to obtain a judgment in an amount uncollectable from Pritchett.

Ultimately, Tama has failed to show that it will suffer irreparable harm if the Court doesn't issue an injunction. Mr. Pritchett has at least around $3,000,000 of assets, and Tama has failed to prove that it is likely to receive any award, much less an award greater than that amount. Therefore, the Court concludes that the irreparable harm factor weighs against issuing a preliminary injunction.

### D. Balance of Hardships[14]

The Court concludes that the balance of hardships weighs in favor of Pritchett. Tama has failed to prove a likelihood of success on the merits or that it will suffer irreparable harm; therefore, Pritchett stands to lose much more from being enjoined from selling its product than Tama does for the losses it alleges, most of which Pritchett has the resources to compensate Tama for should Pritchett be found liable. The Court has already rejected Tama's argument that Pritchett is a willful infringer because he did not hire counsel or conduct a patent search; therefore,

---

[14] Because the Court has found that Tama has not shown a likelihood of success on the merits or irreparable harm, logic dictates that it cannot obtain a preliminary injunction. *See Amazon.com, Inc.*, 239 F.3d at 1350 (holding that logic dictates that a movant "cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm.") (original emphasis). The Federal Circuit has indicated, however, that it prefers for a district court to make findings regarding each of the four factors before granting or denying an injunction request. *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000). Therefore, the Court will provide a concise analysis of the remaining two factors.

Tama's argument that Pritchett's allegedly bad acts trump its harms fails.  For these reasons, the Court concludes that the balance of hardships is decisively in Pritchett's favor.

### E.  Public Interest

Tama's argument that the public interest is served by issuing an injunction hinges on it showing a likelihood of success on the merits.  [Dkt. 60-1 at 42.]  The Court has concluded, however, that Pritchett has raised a substantial question regarding the validity of Claim 1 of the '551 Patent, and the USPTO has granted reexamination on that claim.  Because Tama has not established a likelihood of success on the merits (or irreparable harm or that the balance of hardships is in its favor), the Court concludes that the public interest is served by denying the preliminary injunction.  *Abbott Laboratories*, 452 F.3d at 1348 (holding that the public interest is best served by denying a preliminary injunction when a party did not establish a likelihood of success on the merits).

### F.  Consideration of All Factors

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted."  *Nat'l Steel Car, Ltd.*, 357 F.3d at 1324.  Based on its analysis of the four factors, the Court denies Tama's request for a preliminary injunction.  Specifically, Tama has not shown that it is likely to succeed on the merits or that it will suffer irreparable harm if an injunction does not issue.  The balance of harms and the public interest weigh against issuing an injunction.  Therefore, the Court concludes that Tama is not entitled to the extraordinary remedy it seeks.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **STRIKES** Mr. Chi's affidavit, [dkt. 72], and **GRANTS** Tama's Motion to Consider Arguments Related to Defendants' Surreply, [dkt. 116].  The Court **DENIES** Tama's Motion for a Preliminary Injunction based on its analysis of the ap-

plicable factors.  [Dkt. 58.]  Pritchett's Motion to Stay Litigation Pending Reexamination of the

Patent-in-Suit, [dkt. 69], remains **UNDER ADVISEMENT**.

08/09/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only</u>:**

Stephen E. Arthur
HARRISON & MOBERLY
sarthur@harrisonmoberly.com

Steven G. Cracraft
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
scracraft@brannonrobinson.com

William Kenneth Doss
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
wkd@brannonrobinson.com

Kenan Larry Farrell
KLF LEGAL
kfarrell@klflegal.com

David Eugene Novak
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
den@brannonrobinson.com

Arnold I. Rady
LERNER DAVID LITTENBERG KRUMHOLZ & MENTLIK, LLP
arady@ldlkm.com

Arthur S. Robinson Jr.
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
asr@brannonrobinson.com