UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TAMA PLASTIC INDUSTRY, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:11-cv-783-JMS-DKL |
| | ) | |
| PRITCHETT TWINE & NET WRAP, LLC, *et al.*, | ) | |
| *Defendants.* | ) | |

## <u>ORDER</u>

On August 3, 2012, the Court issued an order for the parties to show cause why this patent and trademark infringement action should not be transferred to the United States District Court for the District of Nebraska, where the remaining defendants reside and the alleged infringement originated. [Dkt. 170.] The parties responded and oppose transfer for various reasons that will be discussed further below. [Dkts. 181; 182.] After considering the parties' positions and the factors applicable when considering transfer, the Court concludes that the factors clearly weigh in favor of transferring this case to Nebraska.

## I.
### BACKGROUND

Plaintiff Tama Plastic Industry ("<u>Tama</u>"), an Israeli business corporation, initially filed this patent and trademark infringement action against two sets of defendants: 1) Defendants Pritchett Twine & Net Wrap, LLC, and Joseph Jerald Pritchett, also known as Jerald Pritchett ("<u>the Pritchett Defendants</u>"); and 2) Defendants Bale Supply, LLC, James Brown, and Zachary Brown ("<u>the Brown Defendants</u>"). [Dkt. 1 at 1-2, ¶¶ 1-3.] Tama alleged that the Pritchett Defendants were located and did business in Nebraska, [dkt. 1 at 1-2 ¶ 2], which the Pritchett Defendants admitted in their Answer, [dkt. 28 at 2 ¶ 2]. Tama further alleged that the Pritchett De-

fendants did business in this District, [dkt. 1 at 3 ¶ 7], but the Pritchett Defendants denied that allegation in their Answer, [dkt. 25 at 2 ¶ 7].

As for the Brown Defendants, Tama alleged that they were located and did business in Indiana and that they had infringed on Tama's patent by distributing an accused product in Indiana that the Pritchett Defendants had imported to Nebraska from China. [Dkt. 1 at 2 ¶ 3, 4 ¶¶ 10-11, 6.] In their Answer, the Brown Defendants admitted that they are citizens of Indiana and that they did business in this District, [dkt. 24 at 2 ¶¶ 3], but they denied marketing, promoting, selling, or distributing Pritchett's accused product, [dkt. 24 at 2 ¶¶ 3, 4]. The Brown Defendants gave conflicting responses in their Answer to allegations that they operated a website referencing the accused products. [*Cf.* dkt. 24 at 2 ¶ 3 (admitting paragraph that includes allegation about maintaining the website at issue), *with* dkt. 24 at 24 at 2 ¶¶ 7-8, 4 ¶ 31 (denying allegations about website).]

Tama took no further action to prosecute its claims against the Brown Defendants, and ultimately they were dismissed from this case by stipulation. [Dkts. 144; 159.] It is undisputed that the claims that remain in this action are exclusively between Tama, an Israeli business partnership, and the Pritchett Defendants, who are located in Nebraska. [Dkt. 1 at 1-2.]

## II.
### APPLICABLE LAW

An action for patent infringement may be brought "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although the Federal Circuit reviews district court rulings in patent litigation, the law of the Seventh Circuit applies regarding

transfers of venue. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit…." (citation omitted)).

This Court typically considers four factors in deciding whether to transfer an action: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the *situs* of material events and access to proof; and (4) the interests of justice. *No Baloney Mktg., LLC v. Ryan*, 2010 WL 1286720, *10-12 (S.D. Ind. 2010). As the Seventh Circuit has held, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation*, 626 F.3d 973, 978 (7th Cir. 2010) (*citing Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).[1] Moreover, 28 U.S.C. § 1404(a) "permits a flexible and individualized analysis" and "affords the district courts the opportunity to look beyond the narrow or rigid set of considerations in their determinations." *Research Automation*, 626 F.3d at 978. This Court is "grant[ed] a substantial degree of deference . . . in deciding whether transfer is appropriate." *Id.*

## III.
### DISCUSSION

The parties oppose the Court's proposed transfer. [Dkt. 181; 182.] The Pritchett Defendants analyze the applicable factors and conclude that they weigh in favor of this litigation

---

[1] Applying the law of the Fifth Circuit, the Federal Circuit called dicta *Coffey*'s "strong statement" about the independent considerations of judicial economy. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010). To the extent that *Research Automation*'s reaffirmation of *Coffey*'s dicta might also be characterized as dicta—a question not considered in *In re Vistaprint*—the Court notes that the Seventh Circuit has cautioned lower courts to avoid "treat[ing] lightly" dicta "until disavowed," *Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980). Given the Seventh Circuit's strong concerns about judicial economy, *see, e.g., Neal v. Honeywell Inc.*, 191 F.3d 827, 830 (7th Cir. 1999) (reviving, for reasons of judicial economy, an ultimately meritorious argument made below but not raised on appeal because "[s]ometimes the judiciary must act in self-defense"), the Seventh Circuit does not appear likely to disavow *Coffey* / *Research Automation* anytime soon. This Court will act accordingly.

remaining in Indiana.  [Dkt. 181.]  Tama also argues that the applicable factors weigh in favor of keeping the action in Indiana, [dkt. 182 at 5-7], and further contends that jurisdiction and venue were proper when Tama filed its case and that the dismissal of the Brown Defendants did not create a legal basis to transfer, [*id.* at 2-5].  The Court will address each of these arguments.

### A.   Initial Propriety of Venue and Changed Circumstances

Before balancing the factors the Court typically considers when determining if transfer is appropriate, the Court must address Tama's alternate arguments opposing transfer.  Tama misconstrues the Court's recitation of the allegations surrounding the Brown Defendants in the order to show cause as "[t]he Court appear[ing] to question whether this case was properly originally brought in this judicial district."  [Dkt. 182 at 2.]  Tama misses the point.  Regardless of the propriety of Tama's initial choice of venue, without taking further action to prosecute its claims against the Brown Defendants, those defendants were dismissed by stipulation relatively early in the litigation.  [Dkts. 144; 159.]  This does, of course, make the Court wonder whether the allegations tying Tama's action to this District were ever viable, but given the Brown Defendants' conflicting responses to Tama's allegations that they operated a website referencing the accused products, the Court gives Tama the benefit of the doubt.  [*Cf.* dkt. 24 at 2 ¶ 3 (Brown Defendants' Answer admitting allegation that includes maintaining website at issue), *with* dkt. 24 at 24 at 2 ¶¶ 7-8, 4 ¶ 31 (Brown Defendants' Answer denying allegations about website).]

To the extent that Tama implies that a Court cannot transfer a case from a proper forum to a more appropriate forum, applicable precedent does not support that position.  *See In re LimitNone, LLC*, 551 F.3d 572, 575-76 (7th Cir. 2008) (detailing the difference between transfer under § 1404(a) and § 1406(a), namely that transfer is appropriate under § 1404(a) when venue is proper in multiple places but one is "superior to the rest" and transfer is appropriate under

§ 1406(a) "only when venue is improperly laid").[2]  Therefore, the Court rejects any argument

from Tama that it cannot transfer this action because venue here may have initially been appro-

priate.  [Dkt. 182 at 2-3.]

Next, Tama argues that the dismissal of the Brown Defendants "does not destroy venue

or the court's personal jurisdiction over the [Pritchett Defendants] and does not create a legal ba-

sis to transfer."  [Dkt. 182 at 4.]  Again, Tama misses the point.  The dismissal of the Brown De-

fendants may not have "destroy[ed] venue[;]" however, it did create the undisputed situation

where the parties and the claims that remain in this action are exclusively between Tama, an Is-

raeli business partnership, and the Pritchett Defendants, who are all located in Nebraska.  More-

over, all of the remaining allegations regarding the alleged infringement surround the Pritchett

Defendants' actions stemming from Nebraska.  This suggested to the Court that Nebraska may

be a more appropriate forum than Indiana, which prompted the Court to propose transfer.

Finally, Tama attempts to bind the Court with a stipulation Tama made with the Pritchett

Defendants after this litigation commenced that the Pritchett Defendants would not challenge

venue in Indiana.  [Dkt. 182 at 4-5 (referencing dkt. 159).]  Specifically, the stipulation provides

that

> Pritchett admits that Pritchett is subject to the personal jurisdiction of the Court
> and that venue of this action is proper, and Pritchett waives to the fullest extent
> enforceable under applicable law any objection that Pritchett may now or hereaf-
> ter have to the venue of this action, and agrees that [it] will not seek a change of
> venue of this case based on 28 U.S.C. § 1400 or 1404 or on any other grounds.

[Dkt. 109 at 2.]  Tama argues that it "would not have agreed to the dismissal of the Browns if it

would have created a basis for Pritchett to transfer the case to Nebraska."  [Dkt. 182 at 4.]  The

---

[2] The Court notes that it proposed transfer under 28 U.S.C. § 1404(a), not under 28 U.S.C.
§ 1406(a).  [*See* dkt. 170  at 2 (referencing § 1404(a)).]

Court reminds Tama that the Pritchett Defendants did not ask for transfer, the Court proposed it under its inherent authority, which is discussed further below.

Tama notes that it submitted its stipulation with the Pritchett Defendants, [dkt. 109], on May 30, 2012, but that "it apparently has not been considered by the Court because it was not filed as a motion." [Dkt. 183 at 4.] Tama's request that the Court give preclusive effect to its stipulation with the Pritchett Defendants is denied. [Dkt. 109.] Neither party has cited any authority that parties can enter into a valid forum-selection clause that binds the Court after litigation has already commenced. And even if they could, the Seventh Circuit has held that "[d]espite the existence of a valid forum-selection clause, courts may still transfer a case under § 1404(a)" if the applicable factors necessitate transfer. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (holding that a "forum-selection clause is not dispositive under § 1404(a)").[3] Specifically, only the "convenience of the parties" factor "is within the parties' power to waive." *Id.* District courts still must consider the other factors, including the interest of justice. *Id.*

Furthermore, the Court notes that the parties' stipulation does not contemplate, and the parties do not challenge, the Court's inherent authority to manage its docket and *sua sponte* propose transfer to a more appropriate forum after giving the parties an opportunity to be heard. *See Runk v. United Fire & Cas. Co.*, 2009 U.S. Dist. LEXIS 93700, 24-25 (N.D. Ind. 2009); *see also Matter of Cont'l Cas. Co.*, 29 F.3d 292, 295 (7th Cir. 1994) ("[T]he district court should have

---

[3] Tama cites two non-precedential cases that a party can waive challenges to venue, [dkt. 182 at 5]; however, those cases do not comport with the Seventh Circuit's pronouncement in *Heller*, 883 F.2d at 1293. Moreover, to the extent that Tama argues that an order the Court entered dismissing the Brown Defendants confirmed that "[t]his Court has jurisdiction over the parties and the subject matter of this action," [dkt. 182 at 3 (referencing dkt. 159)], the Court again directs Tama to the case law cited above that venue can be proper in multiple places but that transfer is appropriate if one is superior, *In re LimitNone, LLC*, 551 F.3d at 575-76.

solicited the parties' submissions before acting, to avoid what has happened in this case—extended disputation, potentially leading to another change of forum.").  Instead, the parties' stipulation merely states that the Pritchett Defendants waive any objection they have to venue and will not seek a change of venue.  [Dkt. 109 at 2.]  The Pritchett Defendants have done neither of those things.[4]  For these reasons, the parties' stipulation does not preclude the Court from determining whether transfer is appropriate under § 1404(a).

### B.  Analyzing Transfer Factors

Tama and the Pritchett Defendants argue that on balance, the four factors the Court must consider to determine whether transfer is appropriate weigh in favor of this action remaining in Indiana.  The Court will analyze each of the applicable factors and the parties' specific arguments.

### i.  Interest of Justice

The Pritchett Defendants concede that transferring this case to Nebraska would promote the interest of justice in terms of the Court's caseload; however, they argue that because this Court had to familiarize itself with the case to rule on Tama's motion for preliminary injunction, ultimately, the case should remain here.  [Dkt. 181 at 3.]  Tama argues that the parties have "invested substantial time and resources educating this Court" on issues in this litigation that will be considered in later proceedings, such as claim construction and trial.  [Dkt. 182 at 7.]

Again, the interest of justice "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Research Automation*, 626 F.3d at 978.  This factor "relates to the efficient administration of the court sys-

---

[4] The Pritchett Defendants, through their opposition to the Court's proposed transfer, have lived up to their obligations under the stipulation, even to the extent of opposing transfer to their home district.

tem," and the Court considers relevant things such as docket congestion, likely speed to trial in the transferor and potential transferee forums, each court's familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.*

First, the Court will consider docket congestion and likely speed to trial in each district. Statistically, Tama may receive a quicker resolution of its case in Nebraska than it would in this District. The District of Nebraska has three full-time district judges.[5]  *See* U.S. Dist. of NE Website, http://www.ned.uscourts.gov/attorney/judges-information (visited on Sept. 10, 2012). There were 529 civil cases filed in that district in 2011 (approximately 176 per district judge), and the median time to trial was 17.4 months. *See* United States District Courts Statistics, *available at* http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2011/tables/C05Mar11.pdf (visited Sept. 10, 2012). In contrast, there were 1,829 civil cases filed for the five full-time district court judges in this District in 2011 (approximately 366 per district judge), and the median time to trial was 31 months. *Id.*  Based on these statistics, each district judge in this District carries more than twice the number of civil cases as each district judge in the District of Nebraska, and the time to trial in the District of Nebraska is almost half of what it is here. Therefore, considerations such as docket congestion and likely speed to trial clearly weigh in favor of transferring this action to Nebraska.

Second, as for each District's relative familiarity with governing law, that consideration is neutral where, as here, federal law governs. *See, e.g., Coffey*, 796 F.2d at 221 ("In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with

---

[5] That district also has four senior district judges, as compared to this District's one senior district judge. Because senior district judges typically carry reduced caseloads, the Court will not consider them for purposes of this analysis.

the applicable state law." (citation omitted)). In patent litigation, Federal Circuit law governs "both substantive and procedural issues intimately involved in the substance of enforcement of the patent right[,]" *Flex-Foot, Inc. v. CRP, Inc*., 238 F.3d 1362, 1365 (Fed. Cir. 2001) (internal quotations and citation omitted), and that Court has general appellate jurisdiction, 28 U.S.C. § 1295. Therefore, regardless of transfer, the same substantive law would apply and the same circuit court would hear an appeal, should one occur.

The third consideration, "the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy," *Research Automation*, 626 F.3d at 978, favors transfer. It appears that Indiana has always had a tenuous connection to Tama's trademark and patent infringement allegations, but now that the Brown Defendants have been dismissed, even that connection is gone.[6] Nebraska, on the other hand, has always had a strong connection to Tama's allegations. The Pritchett Defendants are all located in Nebraska and Tama's infringement allegations stem from their activity there. In addition, Mr. Pritchett has conceded that he is personally liable for any judgment and relies on 1,000 acres of land in Nebraska worth approximately $3,000,000 as collateral to satisfy any judgment in this action. [Dkt. 180 at 15-16.] Based on these considerations, it is clear that Nebraska has a much stronger tie to the allegations in this litigation.

The Court concludes that all of these considerations, and therefore the interest of justice, strongly favor transferring this action to Nebraska. Applicable statistics show that the parties would likely obtain swifter justice in Nebraska, both courts are equally familiar with the governing law, and Nebraska has a much stronger connection with the underlying allegations. Although the parties argue that this action should remain in Indiana because this Court ruled on

---

[6] The Court will address the parties' argument that counsel and various expert witnesses are located in Indiana in the next section.

Tama's injunction request and is somewhat familiar with the parties' underlying allegations and defenses, [dkts. 181 at 3; 182 at 7], this argument is substantially undercut by the decision of the United States Patent and Trade Office ("USPTO") to grant reexamination of the patent-in-suit, [dkts. 148; 148-1].  In other words, the arguments and defenses that emerge after reexamination may be materially different than the arguments the Court heard when it ruled on Tama's motion for a preliminary injunction.  Furthermore, key events in a patent case—*Markman* briefing and claim construction—have yet to occur.  This action is currently at a crossroads where it will either be stayed pending reexamination, as discussed more fully below, or it will proceed on to the crucial stages in patent litigation.

Given that the considerations addressed herein strongly favor transfer and the litigation is at a point where it could be transferred with little adverse consequences, the Court concludes that the interest of justice dispositively weighs in favor of transferring this case to the District of Nebraska.  *Research Automation*, 626 F.3d at 978.  Out of an abundance of caution, however, the Court will address the remaining factors that apply to the transfer analysis.

### ii.   *Convenience of the Parties*

Tama argues that the convenience of the parties favors its action remaining in Indiana because if it is transferred to Nebraska, Tama will have to obtain new local counsel.  [Dkt. 182 at 6.]  The Pritchett Defendants argue that for them, convenience "is governed by economics" and it is more convenient for them to drive 14 hours to Indiana than it is to pay "the travel time and costs for three to four attorneys, and at least two expert witnesses who work in [Indiana]" to travel to Nebraska.  [Dkt. 181 at 2.]

The convenience of counsel is not a proper consideration in the transfer analysis.  *Whitney v. Big Dog Holdings, Inc.*, 2007 WL 3334503, *6 n.3 (S.D. Ind. 2007); *Caudill v. Keller Wil-*

*liams Realty Int'l Inc.*, 2012 U.S. Dist. LEXIS 95871, *12 (N.D. Ind. 2012) (convenience of lo-cal counsel not a factor when considering a motion to transfer venue).  "Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major met-ropolitan areas."  *Board of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000).

The District of Nebraska is based in Omaha, which is the largest city in Nebraska and can accommodate the transportation and local representation needs of the parties and counsel.  The Pritchett Defendants do not cite any case law supporting their contention that the economic effect of transfer should be taken into consideration in the transfer analysis.  Moreover, the Court notes that while the Pritchett Defendants cite the expense of transporting "three or four" counsel to Nebraska, rarely is it necessary for that many attorneys to be present in person for a legal pro-ceeding.

Again, Tama is based in Israel and the Pritchett Defendants are based in Nebraska.  Tama does not argue that it will be more or less convenient for it logistically to litigate this matter in Nebraska.  And the Pritchett Defendants improperly focus on the convenience of their counsel instead of their own convenience, which unquestionably supports transfer to their home district.  To the extent that Tama argues that it will be inconvenient for both parties if this action is trans-ferred because they have a specialized case management order already in place, [dkt. 182 at 6], the Court notes that when a case is transferred, the entire docket is transferred, including the his-tory of the case.  Therefore, the parties may continue to work under the agreed case management plan, unless the transferee court deems it inappropriate.  For these reasons, the Court concludes that the convenience of the parties does not weigh against transfer.

iii.    *Convenience of the Witnesses*

Both parties cite the location of their expert witnesses as a factor in favor of this action remaining in Indiana.  [Dkts. 181 at 2; 182 at 6.]  Tama further contends that its non-party witnesses are located "in many states," but it only specifically references a distributor in Iowa. [Dkt. 182 at 6.]

The convenience of expert witnesses is not a factor courts consider in deciding a transfer motion.  *Boyd v. Snyder*, 44 F. Supp. 2d 966, 971 (N.D. Ill. 1999) (holding that the convenience of expert witnesses is not a factor to consider in deciding a transfer motion because, like counsel, expert witnesses "are all paid individuals ... whose job it is to be present in court"); *see also Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 961 (N.D. Ill. 2000) ("However, the residency of expert witnesses does not affect this court's analysis because expert witnesses are paid for their time and are within the control of the party calling them.").  Instead, the "potential convenience or inconvenience to non-party witnesses . . . is often deemed the most important factor in the transfer balance."  *Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 946 (S.D. Ind. 2008) (citation omitted).

The Court will not consider the convenience of expert witnesses in its analysis, especially the "prospective experts" who the Pritchett Defendants are "interviewing."  [Dkt. 181 at 2.]  Although the parties did not provide a specific list of non-party witnesses, Tama does reference a distributor located in Iowa, which is adjacent to Nebraska.  [Dkt. 182 at 6.]  And in support of its preliminary injunction, Tama relied on allegedly infringing products obtained by a sales representative in South Dakota, which is also adjacent to Nebraska.  [Dkt. 59 at 26.]  Therefore, it appears to the Court that at least some non-party witnesses are geographically closer to Nebraska

than they are to Indiana, and it would be more convenient for them if this matter was transferred to Nebraska.

> ### iv.    Situs of Material Events

The third factor, the situs of material events, weighs in favor of transferring this action to Nebraska.  It is undisputed that the Pritchett Defendants are located in Nebraska and that their allegedly infringing behavior stems from their actions in Nebraska.  In fact, the heart of this matter has always been located in Nebraska, where the alleged infringement began.  Tama's allegations against the Brown Defendants were that they maintained a website that featured Pritchett's products, but without the Pritchett Defendants' allegedly infringing products, there would not have been products for the Brown Defendants' website to feature.  Therefore, the Court finds that the situs of material events factor weighs strongly in favor of transfer.

> ### v.    All Factors

The Court determines that it is appropriate to transfer this case to the District of Nebraska because venue in that jurisdiction is superior to venue in Indiana.  The interest of justice factor dispositively weighs in favor of transfer.  As for the other factors, the convenience to the parties does not weigh against transfer, the convenience of the witnesses weighs in favor of transfer, and the situs of material events weighs strongly in favor of transfer.  Based on this analysis, the Court concludes that it is appropriate to transfer this action to the District of Nebraska pursuant to 28 U.S.C. § 1404(a).

## C.  Pending Motion to Stay

Presently pending before the Court is the Pritchett Defendants' motion to stay this litigation pending the outcome of a reexamination request with the USPTO.  [Dkt. 69.]  While that motion was pending, the USPTO granted reexamination on the patent-in-suit, [dkt. 148-1], and

the parties have filed memoranda detailing how that decision affects the stay request, [dkts. 150; 153; 154].  Because this Court has determined that the District of Nebraska is the superior forum for this litigation, it is more appropriate for that court to determine whether or not this litigation should be stayed during the USPTO's reexamination of the patent-in-suit.  Since Federal Circuit law governs that matter in both courts, the parties will likely not need to re-brief the issues, unless the transferee court determines re-briefing to be appropriate.

# IV.
## CONCLUSION

Tama's request that this Court give preclusive effect to its venue stipulation with the Pritchett Defendants is denied.  [Dkt. 109.]  Neither party has cited any authority that parties can enter into a valid forum-selection clause that binds the Court after the litigation has already commenced.  And even if they did enter into a valid forum-selection clause, the Seventh Circuit has held that a forum-selection clause does not preclude transfer under 28 U.S.C. § 1404(a), if appropriate.  Furthermore, the parties' stipulation does not contemplate, and the parties do not challenge, the Court's inherent authority to manage its docket and *sua sponte* propose transfer after giving the parties an opportunity to be heard.

After considering the applicable factors and the parties' responses to the Court's proposed transfer, the Court concludes it is appropriate to transfer this action to the United States District Court for the District of Nebraska.  For the reasons detailed herein, the interest of justice factor is dispositive, and the additional factors either do not weigh against transfer or further support it.  Because the District of Nebraska is the superior forum for this litigation, the Clerk is directed to **TRANSFER** this action to that Court pursuant to 28 U.S.C. § 1404(a).  The Pritchett Defendants' Motion to Stay Litigation will remain pending for the transferee court to rule on, although it will be terminated as a pending motion on this Court's docket.  Any previously or-

dered dates and deadlines are **VACATED** and any other pending motions are **DENIED AS MOOT**.

09/11/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Stephen E. Arthur
HARRISON & MOBERLY
sarthur@harrisonmoberly.com

Steven G. Cracraft
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
scracraft@brannonrobinson.com

William Kenneth Doss
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
wkd@brannonrobinson.com

Kenan Larry Farrell
KLF LEGAL
kfarrell@klflegal.com

Tony Allen Gibbens
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
tag@brannonrobinson.com

Keir J. LoIacono
LERNER DAVID LITTENBERG KRUMHOLZ & MENTLIK, LLP
600 S. Avenue West
Westfield, NJ 07090-1497

David Eugene Novak
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
den@brannonrobinson.com

- 15 -

Arnold I. Rady
LERNER DAVID LITTENBERG KRUMHOLZ & MENTLIK, LLP
arady@ldlkm.com

Arthur S. Robinson Jr.
BRANNON ROBINSON SOWERS HUGHEL & DOSS PC
asr@brannonrobinson.com